May it please the Court, Robert Cry for Bank Melli. The District Court should have dismissed this case for four reasons. As a threshold matter, the Supreme Court's decision in Pimentel makes clear that Bank Melli was an indispensable party under Rule 19. The case, therefore, could not proceed in its absence and should have been dismissed. Even if the Court properly reached the merits, the assets at issue were not attachable under either TRIA or 1610G for three reasons, each of which was an independent basis for reversing the decision below. Addressing Rule 19 first, Your Honor, that Rule 19. Sotomayor, counsel, let me just ask you this, though. If there is no immunity, then Rule 19 isn't a problem because your client could be joined in the action, correct? If there's no immunity, jurisdictional immunity of Bank Melli, I see, correct. Right. So why isn't that the starting point? Because if there is any ground on which the District Court has subject matter jurisdiction over Bank Melli, then Rule 19 goes away as an issue because your client can be joined. I agree, Your Honor. But Bank Melli is a sovereign instrumentality, and so it's presumed immune. It's the other side's burden to show an exception to that immunity. And for my part, and only one ground is required, right? We don't have to find that all of the statutes do that. I'm wondering if you would be kind enough to address Section 201A of TRIA, because I find it hard to track your argument as to why that doesn't do away with sovereign immunity in this kind of case. I'm happy to address that, Your Honor. To understand why TRIA doesn't grant immunity over Bank Melli, though, it's important to recognize that the FSIA grants two different types of immunity. There's immunity of the sovereign from jurisdiction, which is Section 1604 and 1605. And then there's section of sovereign property from execution. That's 1609 to 1611. TRIA really only speaks to the latter of those issues. The text of the statute is clear. It says, notwithstanding any other provision of law, a property of a, sorry, the block assets of that terrorist party shall be subject to execution. So that statute's clearly just talking about immunity from property. You know, we can debate whether TRIA removes the immunity of the property here, but that has nothing whatsoever to do with the separate immunity of Bank Melli from jurisdiction. And that's why neither TRIA nor 1610g confers that jurisdiction. Well, if you read it that way, then Rule 19 trumps TRIA. Because you always have immunity and you can't really have a Federal rule trumping a statute, right? It's not a matter of one trumping the other, Your Honor.  What would be a circumstance in which that argument wouldn't work, wouldn't preclude the lawsuit? All it requires is that they have some other basis for overcoming the immunity of Bank Melli. For example, they argue in this case that the commercial activities exception under 1605 applies. Now, we have a response to that. We say the territorial limitations on that exception aren't met here. But, you know, if we're wrong about that, then that would be a basis for jurisdiction. So, absolutely, there are circumstances where you can have Rule 19 applying in a manner consistent with both the immunity of the instrumentality from jurisdiction and the immunity of the assets from execution. But those are, it's very clear under the FSAA that those are two different types of immunity. And both of them are implicated because you need to overcome the asset immunity to go after the assets. But when the process of going after those assets is going to prejudice a stakeholder on those assets that also has separate jurisdictional immunity from suit, what Rule 19 and Pimitel say. And why isn't the immunity overcome here for commercial transactions? Because there's a territorial limitation on it. It's not commercial activity anywhere in the world. The suit has to arise out of the commercial activities of the sovereign that's attempted to be brought into the suit within the United States. And there's a very specific text, but it talks about acts of the foreign sovereign within the United States. That wasn't met here. What this arises out of. Because the Bank Mali activities were in Iran? Exactly. And, you know, the complaint is not totally clear on this. And I would bear that in mind, the posture of the case, too. But based on what we understand, this is a Visa card program that Bank Mali had in Iran. The only connection to the United States was that Visa would then reimburse Bank Mali by paying Bank Mali in Iran. That's not commercial activity by Bank Mali in the United States. You know, they claim that that bank, that Visa would have paid those funds from a New York account. I mean, A, that's not anywhere in the complaint. We don't even know that that's true. And even if so, that doesn't mean that Bank Mali's commercial activity had anything to do with the United States. So there's a territorial limitation on that exception that just doesn't apply here, Your Honor. Because Bank Mali was immune, Rule 19 required the court to examine whether its interests were going to be prejudiced by proceeding in its absence. They clearly would have been here. What plaintiffs are seeking here is not just to take money that Visa owes to Bank Mali and hand it over to plaintiffs instead. They're also seeking an order discharging Visa from any liability to Bank Mali and an instrumentality of Iran so it doesn't matter. Clearly, those actions would threaten Bank Mali's interests in this case. The district court tried to get around that by saying that, well, Bank Mali's an instrumentality of Iran, so it doesn't matter. But the very issue in this case, Your Honor, is whether it's appropriate or permissible under the statutes to hold Bank Mali a separate instrumentality liable for the debts of its sovereign, notwithstanding Bank Ghek, notwithstanding the Treaty of Amity. Pimentel makes clear that as long as the foreign sovereign has a non-frivolous basis for objecting to the proceeding, it's inappropriate to dismiss it as a dispensable party on the theory that it's going to lose. And that's essentially what the district court did here. Bank Mali's arguments that Bank Ghek and the Treaty of Amity require it to be treated separately from Iran are clearly far more than non-frivolous, Your Honor. The district court certified this case for interlocutory appeal precisely because those are weighty issues that should not be decided in Bank Mali's absence. And for that reason, this case really is on all fours with Pimentel. You have an absent sovereign. What about 1610G? On the Rule 19 issue or on the merits, Your Honor? Both. Well, there's – so there's – we're right on the merits. I mean, so it sort of works hand in hand, doesn't it? I agree. Well, for Rule 19, it's just a question of do we have a non-frivolous argument that 1610G doesn't allow attachment here. And I will say we have a correct argument that 1610G doesn't allow attachment here. And the reason is, Your Honor, is that by its plain text, 1610G only talks about attachment as provided in this section, notwithstanding the Bank Ghek factors. And so what that language means, and this is something the United States has told three different courts of appeals now, is that 1610G is not a freestanding exception to immunity. It is just something that allows you to overcome the substantive liability issue that arises under Bank Ghek. And just to explain that in a little more detail, when plaintiffs, like the claimants here, are trying to collect assets from an instrumentality to satisfy a debt of the sovereign, they have to overcome two different hurdles. You have the Bank Ghek problem that as a matter of substantive liability, you  debts. And then you have the immunity problem, which is that because both Bank Mali and Iran are sovereigns under the FSIA, they have to find an exception to sovereign immunity. It seems to me that Congress tried to sweep away all of those objections when it passed the T.I. All right. T.I. The Terrorism Amendment. It didn't try to sweep all of those things aside and say you can go after the assets, assets of the instrumentality, assets of the entity. Not for 1610G and not for TRIA, Your Honor. And 1610G — TRIA, that's the one I was looking for. Did you want me to address 1610G or TRIA? Or both? Well, the — it seems to me Congress acted in steps, right? And what it kept doing is cutting back on immunity. And what it looked to me like they were doing is saying we really want to allow people to go after these assets if there's terrorism involved. Isn't that where we are now? So 1610G was directed to a narrow issue. It was directed to Bank Ghek. And it said notwithstanding this presumption of separate status, which is a substantive liability issue, we're going to let you in some circumstances go after instrumentality assets to satisfy the sovereign debt. But it said, as provided in this section. And so that means you still need to rely on the other exceptions, like 1610A7's terrorism exception, to find an exception to immunity. That's what they haven't done here. On TRIA, Your Honor, I would just disagree with the premise of your claim, because I think it's far from clear that TRIA was meant to overturn Bank Ghek. Their argument to the contrary rests on this parenthetical language in the statute that — where it says the statute permits execution of assets of that territory, that terrorist party, parentheses, including assets of an instrumentality of that terrorist party. And although we will concede there are multiple ways to read that parenthetical, a perfectly legitimate reading of it, and one that's consistent with multiple Supreme Court cases recognizing that including clauses are often just meant to be clarifying rather than expanding, is that language means assets of the terrorist party plus assets of the instrumentality when they are already included with the terrorist party's assets? Why would we do that, though, when it appears that — I mean, the touchstone of statutory analysis is always supposed to be the intent of Congress. And why would we consider that Congress was parsing it as narrowly as possible in this lawyerly fashion, rather than trying to solve a real-world problem and getting money to the people who have been victims? Isn't — I mean, don't we have to pay attention to what Congress was trying to accomplish? Well, what Congress was trying to accomplish in TRIA was to make blocked assets available. These were assets that had been blocked by the executive that wouldn't be available to pay any judgments prior to TRIA, for the most part. And so the issue — you know, that was Congress's broader purpose. We are just debating one narrow issue about what this little parenthetical addressing what was at best a collateral issue meant. And on that, the bedrock principle of statutory interpretation that we would find applicable is not speculating about what Congress intended, but respecting the presumption that statutes should not be construed in a way that contravenes fundamental principles of international law about juridical separateness, that contravenes treaty obligations about respecting the juridical status of separate instrumentalities, unless Congress has clearly stated that that was its intent. And you can see — Do you have a treaty obligation with respect to your client? We do, under the Treaty of Amity, Your Honor. That expressly requires juridical status to be respected. But even apart from that, Bank Act just establishes as a matter of customary international law that the respect given for separate instrumentalities that are juridically separate from their sovereign is something that is respected. And it is just a centuries-old, universally followed — It brings us back to the parenthetical, and the question is, what did Congress mean to do with that? Did it mean to just sort of give an explication, or did it mean to say, look, we really mean it. We don't mean just a narrow thing here, just a state. We mean all of its entities. It's a perfectly plausible reading. And if you read Congress as really wanting to go after state terrorism in every way possible, that's a more plausible reading. And is there some reason we shouldn't rule that way? We shouldn't adopt the broader reading of the parenthetical? Your Honor, I agree those are both plausible and those are both reasonable readings of the parenthetical. But when confronted with two reasonable readings like that, this Court's duty is not to, you know, give the statute its broadest possible sweep because that's what Congress wanted. The Court's duty is to apply neutral canons of interpretation, like the one that says that if you are going to give it that broad reading, you're going to violate international law, you're going to contravene Supreme Court authority, and you're going to breach — I'm sorry, and would violate international law by what? So Bank Act establishes that a matter of customary international law, nations need to respect the separate juridical status of instrumentalities created as entities — But how is it not respected? If Congress says, we're taking away sovereign immunity from the state and we're taking away sovereign immunity from the instrumentalities, it recognizes that they're separate and it wants to do away with both. Why is that a violation? In fact, it mentions these other things, suggesting that they are separate. It's called separate but equal. Right. But, sorry, taking away immunity separately from instrumentalities and from sovereigns, which, I mean, first of all, was not — Can Congress do that? Congress can certainly change the rules of sovereign immunity. That's — this is not a constitutional — It doesn't — doing that does not in any way change the status of the instrumentalities. They're still separate entities. They just happen to be separate entities whose assets are now subject to attachment. Right, but Bank Malley was not — Bank Malley had no relationship whatsoever to the events that led to the default judgments entered against Iran here. And so what Congress is doing here is not — So what? They are a separate entity. They are not in any way at fault, which often happens on entities holding assets and may not be at fault, but they happen to be owned by a terrorist. Right. They happen to be owned by a terrorist. So Congress says, sure, we respect them as a separate entity. They are a separate entity. They continue to be a separate entity. They just happen to be a separate entity that now has to give up its assets. Right. And holding one entity liable for another entity's debts is not respecting it. If I can reserve the rest of my time. Well, how does that not respect — I understand not respecting them or sort of treating them as the same might violate international law, but how does attaching their assets not respect international law? Because if you go after the corporation's assets to satisfy a shareholder's debts, if you go after a subsidiary's assets to satisfy the parent's debts, that's piercing the corporate veil. That is exactly what separate status and separate juridical status under Bank X says you can't do. If I could reserve the rest of my time, Your Honors. Okay. May it please the Court. I'm Curtis Meckling. I stand before you this morning on behalf of the judgment creditor plaintiffs in this case, and I'm going to speak for 15 minutes, if the Court allows, and then allow Mr. Peel, on behalf of Franklin Visa, the remainder of time. Your Honors, Congress has mandated a comprehensive statutory scheme to give victims of Iran-sponsored terrorism redress and the ability to recover their judgments against Iranian assets and the assets of Iran's agencies and instrumentalities of whatever kind were ever found here in the United States. And the property at issue here squarely falls within that regime. Well, maybe so, but what about the Rule 19 argument that the bank is a necessary party and it's not a party to those proceedings? Your Honor, at the risk of stealing some of Mr. Peel's thunder, because I know he wants to concentrate on that, I would say that Judge Breyer below got it absolutely right when he said that Bank Mellie is not a necessary party because nobody asserts liability against Bank Mellie. This is purely a collection case, and therefore, they are not necessary to this case. And that... Well, just explain it to me. Sure. Why is that? Sure. If I have assets and they are being attached, why don't I have the kind of interest that as a matter of due process, it is necessary for me to be a part of the proceedings to defend? I mean, there may be lots of defenses to an attachment. Sure. Well, I have, I would say, three answers to that in this particular case. The first is... Sure. How's that? TRIA and 1610G say that Bank Mellie's interest in these assets is cut off as a matter of statute. And, in fact, these assets are blocked. So Bank Mellie has... Well, say you, but the kind of, you know, what due process means is you get to come into court and dispute it. You could argue that the statute is unconstitutional. You could argue that it doesn't apply to you. You could argue that it's being misread. Right? This is what due process is about. So if you're a necessary party and there's an assertion, oh, you don't have any rights, you say, well, you know, I should be able to come into court. I'm a necessary party because I want to come into court and argue about it. May lose, but that's never been, you know, due process means you get to go into court and then lose. In the context of this case, Your Honor, those concerns are not implicated, because Bank Mellie has no interest in this property at this point. It's been judicially cut off or, pardon me, statutorily cut off. This is purely a collection case with respect to those assets. And more fundamentally, the liability here is Iran's. And the reason that these assets are available to the victims of terrorist acts is that they've got judgments against the real liable party, which is Iran. And all these statutes do is lift the corporate fiction that Bank Mellie's assets should be treated somehow specially or separately. So the liability here is Iran's. And respectfully, Bank Mellie doesn't have an interest to protect. There's been no effort to join Bank Mellie? Bank Mellie came into this action and raised its sovereign immunity defenses. So it has raised its defenses, which have been properly rejected by the court below. My point is that is that a satisfactory substitute for Rule 19 jointer? In other words, they've had a full and fair opportunity to assert their interest in retaining the assets, even though not by means of Rule 19? I think it goes to some of the Rule 19 factors. But more fundamentally, I would say that Rule 19 is irrelevant in this case, because they are not a necessary party to start with by virtue of TRIA and 1610g. From my standpoint as a judgment creditor, this is an enforcement action. This is a garnishment action. I don't have to sue anybody other than the party holding the assets to execute upon them, and TRIA and 1610g say that is the case. And this court in Peterson said that that is the case. Well, let's say you have a collection against, action against John Smith, and you decide he's got a bank account and you're going to, what do you do? I guess you attach a bank account. You garnish wages. I garnish it. I start a turnover procedure. I think garnish applies to wages. Attach applies. But anyway, you want the money in the bank account, right? Right. And so you bring an action against the bank. Why isn't Smith a necessary party to defend against? You know, the bank has no interest in claiming that the judgment is fraudulent or attacking the judgment in any way. They just want to be square with the law. If they get an order saying turn over the assets to the creditor, they'll do that because it's all the same to them as to where the money goes. Sure. Why doesn't the debtor, who is the real party in interest there, have a right to participate? Because that liability of that debtor has already been adjudicated, which is exactly the case here. And what if his claim is, well, you know, they never served me. It was a lie. This was, you know, they claim they served me, but it's a fraudulent, it's a fraudulent, you know, they took a default judgment and the judgment is void or there was no subject manager. You know, there are a variety of defenses that one can have to a collection action. In which case that judgment debtor can come in and seek to vacate the default or try to raise a defense against. But your view is the judgment that there's not a necessary party to the collection. Exactly. And I submit that this Court in Peterson held as much when it said there was no further need once the enforcement proceeding was going to serve Iran or the agencies and instrumentalities that were, whose assets were attempted to be seized in that case. I think that Judge Lambert's decision in the D.C. District Court in the Heizer-Sprint case is exactly on point. Where in that case, Sprint attempted to or sought leave to interplead the agency and instrumentality from Iran whose assets were at issue there. And the Court said, no, that's not required under the statutes, and we're not going to delay these proceedings to permit that. And that's exactly in line with what this Court did in Peterson. Your Honor, I'd like to address briefly the statutory interpretation that counsel went through. We believe that TRIA is absolutely unambiguous and clear. It's absolutely in keeping with the legislative history that Your Honor alluded to. You want to talk about the parenthetical? Yes. Their reading of the parenthetical is extremely strange. They seem to read the parenthetical. Well, it's not extremely strange. It's one way of reading it. Is that not a plausible reading? Is that a possible reading? I submit that it is not. And, you know, let's go through it. They seem to read the parenthetical as saying something like, you know, that the assets of Iran are subject to execution, perens, including assets only of those agencies and instrumentalities that are already part of Iran by virtue of the alter ego and fraud exceptions of Bankhek. My point is that if that reading is correct, it adds the parenthetical adds nothing to the language before it. And, in fact, the second certainty of the reading is that it is not. Your Honor, I submit. It is sort of a mistake. I mean, if you just read briefs, you see lots of stuff like that. Your Honor, I respect. I'll probably go back through your brief and find a few things that are redundant and like that. And lawyers do that. I mean, you know, the lawyer, you know, saying, you know, we really, you know, we mean the entire entity and all of its constituent parts. Just to be clear, you know, you can't say, oh, we're a constituent part. We didn't mean to be, you know. It's not unusual when you read a lot of stuff lawyers write. Your Honor, I respectfully submit that this language clarifies nothing. It adds nothing. And, more important — Well, let me ask you this. If Congress wanted to add rather than clarify, wouldn't it have rather used a separate phrase rather than a parenthetical? It strikes me as a little odd to use a parenthetical, which usually is an explanatory phrase, as a way of sort of vastly expanding the scope of the statute. It's a little odd, isn't it? Your Honor, I say that the actual language of the statute supports our interpretation, because it says not just some agencies or instrumentalities. It says any agencies or instrumentalities. Well, it also says blocked assets of, not blocked assets held by. It says blocked assets of. Yes, that is correct. And it also says notwithstanding any other provision of law, including, I submit, BANCEC. BANCEC is not immutable. Bank — the sovereign immunity presumptions embodied in the BANCEC decision can be withdrawn by Congress. And by this statute and by 16g, 1610g, they have been withdrawn. Well, let me walk you down the argument path just a little bit. Let's say we disagree with you. We think that both readings are plausible. Imagine that thought, okay? And opposing counsel has positive reasons why, given two plausible interpretations, we ought to read it expansively. And we are in a field of international law. We're in the field of foreign relations, where the Supreme Court has generally told us to tread cautiously. Why isn't this a situation where if we do have two plausible readings, which you dispute, but let's just assume the premise, we shouldn't go with their interpretation? Because it would be counter to the manifest intention of Congress, both in the process that the Court alluded to earlier of continually expanding the liability of terrorist states and their instrumentalities over the last — since 1996, I guess. And it's also specifically counter to the express legislative history. This statute, as written, is completely consistent with what Senator Harkin said about it, who was the sponsor of — of TRIA. For purposes of — I'm quoting now. For purposes of enforcing a judgment against a terrorist state, TRIA does not recognize any juridical distinction between a terrorist state and its agencies or instrumentalities. And if that's not a limitation or abrogation of BANC, heck, I'm hard-pressed to know what it is. Kennedy. Can you prevail on Section 210 without even talking about 1610? Or 201, if I got it wrong. Sotomayor. Can I prevail on TRIA without prevailing on 1610G? Kennedy. Yes. Yes. I believe I prevail on both of them, but all of the judgments that the judgment creditors have are enforceable under TRIA. And, you know, I believe it's a very sweeping statute. One last point about the — But if you prevail on 201, do you need to address 1610? That's what I'm wondering. Your Honor, if we prevail on 201, I think we have — we have everything. And is that your position, your beginning position? And then 1610 just is an alternative theory or position? Well, 1610G — we want to prevail on both because 1610G gives some additional relief in the form of punitive damages, which as a practical matter may not be significant here because we're talking about $18 million and judgments in the form of dollars. But we go after both TRIA and 1610G. So I don't need too much time. Just a closing point on the property of issue. The statute doesn't support their position that property of can only be property that's actually owned by the — by a bank melee. State law comes into play under Rule 69. And here the California judgment enforcement statutes are amply broad to get this property. My clients have waited now for, in some cases, 25 years for their redress from Iran and its agencies and instrumentalities. This property is available under the regime set up by Congress to provide that redress. I urge the Court to give them that redress and to affirm the decision below. And with that, I'll turn it over to Mr. Peel. May it please the Court. My name is Thomas Peel, appearing on behalf of Visa, Inc. and Franklin Resources, Inc. I would like to return briefly to the question about due process. No one is saying that bank melee cannot raise any defense it wants in the interpleader. It can raise any defense it wants. The question is whether it wants to stand on its sovereign immunity and refuse to The argument of bank melee is premised just on one statement in Pimentel. And that statement does not reflect the detailed comity and dignity analysis that the Supreme Court used to decide that it could not have the interpleader continue in the Pimentel case. It's really a question of how much solicitude is Iran and an Iranian instrumentality entitled to. Was it entitled to the same solicitude as the Philippines in the Pimentel case? A very important consideration in the Pimentel case was that there was an existing available forum, a Philippine court that was going to adjudicate entitlements to assets stolen from the Philippines itself. The opinion in the Supreme Court says that the Philippines had a unique interest in adjudicating this matter, and it was appropriate in that instance for the United States to abstain. Well, it was also a judgment against Marcos, not a judgment against the Philippines. Well, it was a judgment against Marcos. Actually, you're representing Visa? Yes. Why does Visa care? Visa cares if the TRIA and 1610G subject the assets that are now in the registry of the court to execution by multiple claimants? Because in that case you've turned the assets over, right? So you've turned the assets to the registry of the court, right? They're in the registry. You don't really care whether they go to one party or another. You just want to be off the hook. We want to be discharged, and we want a permanent injunction that settles the matter entirely. If the court were to make a clear ruling that TRIA does not allow the judgment creditors to have access to these assets, then presumably the funds now in the registry of the court would go back into blocked status, and there would be no need for an interpleader. But if TRIA does apply, then we need the device of an interpleader. But Visa should be indifferent to those two results, right? Well — Between getting back the money and having the money given to the claimants, and getting an injunction. It depends on the ruling of the court. If we were faced with the situation in Pimentel where the court said, actually, there might be reason for there to be an interpleader later on, we would have to live with the situation indefinitely. Now, the Supreme Court said, well, Merrill Lynch should be happy because even though this is not going to bring finality for Merrill Lynch, anytime a new case comes up, you can just go through the interpleader process again and have the sovereign come in and say it's immune, and then get rid of the case all over again. That's really sort of cold comfort as far as a holder of an asset that claims no beneficial interest is concerned. It would like to have finality. Aside from that consideration, Visa, Inc. and Franklin Resources, Inc. are perfectly neutral. But you'd be just as much off the hook if you agreed with Bank Malley, right? You're saying, well, we don't — shouldn't we have to go — We don't take any position on the issues regarding the application of TRIA 201 or 1610G. I thought you were. I was just wondering why you cared. Our arguments are conditional, necessarily conditional, in that if these do subject us to potential multiple liability because they apply, then we need an interpleader to protect us, and we need to get a discharge and a permanent injunction in joining further litigation about these funds. Okay. Thank you, Your Honor. Your Honors, in all relevant respects, this case really is Pimentel all over again. That case was a collection action. Just like here, the entity holding the assets interpleaded them into court, and the issue was who they were going to get paid to. When this case was in front of this court the second time, the court recognized that the Philippine government had a potential claim against the assets, and that they were going to get paid to. But it said, not an indispensable party. We don't think their claim exists anymore. The statute of limitations has run on it, so you can go ahead without them. And that case went up to the Supreme Court, and the Supreme Court reversed, because it said when a sovereign has a non-frivolous basis for disputing whether it has an interest in the assets, it is an indispensable party because of its sovereign immunity under Rule 19. That logic applies fully to this case. On TRIA, I heard the accusation from the other side that we have a strained reading of the statute. I heard Judge Graber comment earlier that we had a lawyerly interpretation of the statute. What I didn't hear from anyone was that we have a frivolous interpretation of the statute. You can read it both ways. And that is enough under Rule 19 to mean that we, that that issue should not be resolved. It's like Chevron deference in your view, right? It's even stronger than that. It's a frivolousness standard. And that's not my standard. That's the Supreme Court standard in Pimentel. If it's a non-frivolous argument, then that issue can't be resolved if it's going to affect our interests in our absence. And so clearly TRIA can be read both ways. We have arguments that we would, you know, presumably want to make if we were a party to this action about why it should be read our ways. But that issue should not be settled in a proceeding from which we have sovereign immunity. On 1610g, we have our as provided by argument. And I know that statute is very complex. But again, this is not just our argument. That's the United States' position. And we cited their Hegner brief in our brief. More recently since then, the United States has made that exact same argument in a case pending in this Court by the name of Frim, F-R-Y-M. And so, again, if that argument is not already clear from our brief, I would invite the ---- I assume they declined to file anything in this case. They have not filed anything in this case, Your Honor. But it is the exact same argument on the same issue. They said that as provided by in 1610g means that 1610g is not an exception to immunity. It's only something you can use to overcome the Bank Act presumption for substantive liability. Kennedy, do we call for the views of the United States in our case? That would certainly be within this Court's discretion if you think there are difficult issues. You may not need to reach that because for Rule 19, it's sufficient that those are non-frivolous arguments. And so the fact that the United States has already argued that position to three different courts of appeals, at a minimum, shows it's not a frivolous argument. And so the Rule 19 issue really doesn't require the United States' participation at all. How does your reading square with the recent Seventh Circuit decision in Gates? That's a great question, Your Honor. And the one thing I would know about Gates is there's not a single place in the opinion, there's not a single place in the briefing where the key language as provided by this section is quoted. So that Court just did not have the benefit of the arguments that have been presented here and that have been presented in the three briefs the United States has filed. But your argument, if accepted, would create a circuit split with the Seventh Circuit. Not a split because Gates was addressing the 1610C issue, but I admit there's tension in the reasoning. Like, I agree the logical consequence of our argument should be that that case should have come out the other way probably, too. But that, you know, that Court is not binding on this Court and it didn't, the argument wasn't made in that case. The critical as provided by language wasn't even flagged for the Court. That's 1610G. Beyond that, retroactivity, not even addressed by the other side. There are plainly non-frivolous arguments that these statutes should not be applied retroactively. For TRIA, we can debate whether the relevant primary conduct is the terrorism or the banking violations that were found by OFAC. How is a collection action ever retroactive? In other words, if I have a judgment and I find out that you today have just received assets that are subject to execution because of my judgment, that doesn't make the execution action retroactive, does it? Perhaps not. But this case is different because here we are holding one party liable for a different party's debts. And that is beyond just changing the contours of executable property. That is saying that even though Bank Malley could not have been held liable for the misconduct and actions of its sovereign at the time those actions occurred, now they can. And that is just a whole, you know, different in kind. That's fundamentally different. And finally, property of. Again, they say property of should not require ownership. The D.C. Circuit said otherwise in Heiser and said that it does require ownership. And so that, too, is a non-frivolous issue. These are all issues that should not be decided in our absence, Your Honor. And so, therefore, Rule 19 requires dismissal. I think the Court can order the suit dismissed on that ground just on the current record. If it wants to get to the merits, I think it may well be advisable to call for the views of the United States. And so that would also be a reasonable course of action. Either way, Your Honor, the decision below should be reversed. Thank you. Okay. Thank you. Judge Osayio stands submitted.
judges: Benson, Kozinski, Graber